UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| YESH MUSIC, RICHARD CUPOLO, INDIVIDUALLY, and JOHN EMANUELE, INDIVIDUALLY,  Plaintiffs, V. LAKEWOOD CHURCH, JOEL OSTEEN, INDIVIDUALLY, and VICTORIA OSTEEN, INDIVIDUALLY,  Defendants. | § § § § § § § § § § § § § § | Case No. 4:11-CV-03095 |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) and Alternative Motion for a More Definite Statement Under Rule 12(e) ("Motion"). (Doc. No. 15.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

In August 2011, Yesh Music ("Yesh"), Richard Cupolo ("Cupolo"), and John Emanuele ("Emanuele") (collectively, "Plaintiffs") filed this lawsuit against Lakewood Church ("Lakewood"), and Joel and Victoria Osteen ("the Osteens") (collectively, "Defendants"), alleging direct and contributory copyright infringement. (Doc. No. 1, Orig. Compl. ¶¶ 33-51.) Plaintiffs are the creators, composers, producers, arrangers, and/or copyright owners of the original musical composition and sound recording entitled "Signaling Through the Flames" ("Signaling"), from their album "The Technicolor

Sleep" (the "Composition"). (*Id.* ¶ 9.) Yesh is a general partnership, record label, and publishing company founded by Cupolo and Emanuele in the Long Island, New York area. (*Id.* ¶ 10.) Cupolo and Emanuele also work together as composers and perform under the name "The American Dollar." (*Id.*) Plaintiffs obtained a Copyright Registration Certificate for the Composition in November 2006. (*Id.* ¶ 14.) Plaintiffs are the owners of the master recordings contained in the Composition and are the owners of all rights, title, and interest in and to the copyrights in the Composition. (*Id.* ¶¶ 15-16.)

In February 2010, Plaintiff's licensing agent, Dittybase, executed a limited licensing agreement authorizing Defendants to use the Composition solely on their website and in certain venues for a term of one year ("Licensing Agreement"). (*Id.* ¶ 17.) The Licensing Agreement did not authorize use of Plaintiffs' music on television broadcasts, and expired on February 1, 2011. (*Id.* ¶¶ 18-19.) Although Defendants never paid a fee to renew the limited use Licensing Agreement, they continued to use the Composition on their websites after the expiration without any authorization from Plaintiffs or Dittybase. (*Id.* ¶¶ 20-21.) In March 2011, Defendants began using the Composition in global television broadcasts of church services. (*Id.* ¶ 22.) Thereafter, Defendants began using the Composition in television advertisements featuring the Osteens marketing their DVD, "Supernatural." (*Id.* ¶¶ 11, 23.) The Composition plays as theme music during the entire run time of the advertisement for "Supernatural." (*Id.* ¶ 24.)

Plaintiffs believe Defendants continue to use the Composition in their advertisements for "Supernatural," and furthermore believe that the "Composition is integrated into Defendants' marketing message and serves as a key device in the

promotion of Defendants' products." (*Id.* ¶¶ 25-26.) Plaintiffs state that Defendants intentionally, willfully, purposefully, and knowingly distributed, used, commercialized, exploited, and/or made derivative works of the Composition without obtaining valid certificates of authorship and/or copyright assignments from Plaintiffs or their licensing agents. (*Id.* ¶¶ 28, 36.) Plaintiffs did not receive royalties for the public broadcast, performance, and exploitation of the Composition and its derivatives. (*Id.* ¶ 30.) According to Plaintiffs, "the Composition contributed to the success of Defendants' DVD and other marketing campaigns for other products, and substantially increased revenues and profits for Defendants." (*Id.* ¶ 31.)

Plaintiffs allege that Defendants violated the Copyright Act, 17 U.S.C. §§ 106, 115, and 501, by directly infringing on Plaintiffs' copyrights and exclusive rights, in and relating to the Composition, by distributing, using, commercializing, exploiting, and/or making derivatives of the Composition without Plaintiffs' written authorization or consent. (*Id.* ¶ 34.) Plaintiffs also aver that Defendants willfully, knowingly, and intentionally induced, caused, encouraged, and/or assisted various third parties, including, but not limited to, various television stations to publicly broadcast, perform, and otherwise exploit the Composition and/or derivatives thereof. (*Id.* ¶ 42.) Defendants committed these acts, Plaintiffs allege, even though they knew or should have known that they did not have Plaintiffs' written authorization or consent to do so. (*Id.*) Plaintiffs further claim that Defendants engaged in the business of knowingly inducing, causing, encouraging, assisting, and/or materially contributing to the making of a derivative composition from the Composition, thereby infringing Plaintiffs' copyrights and exclusive rights in and relating to the Composition. (*Id.* ¶ 45.) According to Plaintiffs, an

3

infringement of their rights in and to the Composition occurred each time a third party, as a result of Defendants' inducement, encouragement, and/or assistance, reproduced, broadcasted, performed, or otherwise exploited the Composition or any derivatives thereof, or made derivative works from the Composition. (*Id.* ¶¶ 43, 44.) Plaintiffs allege they are entitled to actual damages in the amount of $3,000,000, or alternatively to statutory damages with respect to "each work infringed and each act of infringement." (*Id.* ¶¶ 38-39, 49-50.) Plaintiffs further claim they are entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505. (*Id.* ¶¶ 40, 51.)

Defendants then filed this Motion, seeking to dismiss all claims against them pursuant to Rule 12(b)(6). Specifically, Defendants claim: (1) the Licensing Agreement authorized all allegedly infringing uses at all times; (2) Plaintiffs do not plead any facts that could form the basis of a direct or contributory infringement claim against the Osteens; (3) Plaintiffs cannot recover for "each act of infringement"; (4) 17 U.S.C. § 115 does not confer a right or provide a basis for recovery; (5) punitive damages are not recoverable under the Copyright Act; and (6) rights of attribution and integrity are not recognized under the Copyright Act. (Mot. Dismiss 2.) Furthermore, Defendants contend, Plaintiffs' claim for alleged acts and damages that occurred outside of the United States should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the Copyright Act does not apply extraterritorially. (*Id.*)

**II. LEGAL STANDARD**

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief

4

above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

### III. ANALYSIS

The Court interprets the Licensing Agreement pursuant to British Columbian contract law. The Court concludes that the Licensing Agreement does not entitle

Defendants to perpetual Internet use of the Composition for post-expiration productions. Furthermore, the Licensing Agreement was not in effect after February 1, 2011. Additionally, Plaintiffs state a claim for extraterritorial infringement of the Copyright Act because, according to the Original Complaint, the infringing acts were initiated in the United States. Therefore, Plaintiffs' claims against Lakewood for direct and contributory copyright infringement should not be dismissed. However, Plaintiffs have failed to state a claim for direct or contributory infringement against the Osteens, for each act of infringement, and pursuant to 17 U.S.C. § 115. The Court also strikes Plaintiffs' request for punitive damages. The Court declines Defendants' request to dismiss Plaintiffs' alleged claim for violation of the right of attribution and integrity, as Plaintiffs do not actually refer to that right in their Original Complaint. The Court grants Plaintiffs leave to amend their Original Complaint for the exclusive purpose of curing the deficiencies in their claims against the Osteens.

### A. Choice of Law

The Licensing Agreement provides that it will be governed by the laws of British Columbia.[1] (Doc. No. 15-1, Ex. 1 to Mot. Dismiss, Licensing Agreement ¶ 9.) The parties agree that British Columbian contract law governs this Court's interpretation of the Licensing Agreement. Choice-of-law clauses are presumptively valid. *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997). The presumption of validity may be overcome only by a showing that the clause is unreasonable under the circumstances. *Id.* Furthermore, "[w]here federal question jurisdiction is invoked, as here,

---

[1] Documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referenced to in the plaintiff's complaint and are central to the claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The Licensing Agreement is central to Plaintiffs' claims and is referenced in the Original Complaint; therefore, the Court will consider it part of the pleadings.

6

federal courts generally apply federal common law principles to resolve choice of law disputes." *National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of Am.*, 208 F.Supp.2d 46, 62 (D.D.C. 2002). "Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Id.* According to the Restatement (Second) of Conflicts of Laws, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1). The Licensing Agreement provides for the application of British Columbian law, there is no showing of unreasonableness, and the parties agree British Columbian law governs. Therefore, the Court will apply British Columbian contract law.

### B. Licensing Agreement

Defendants claim that the Licensing Agreement grants Lakewood the right to use the Composition on "any website" in perpetuity. (Mot. Dismiss 9.) Therefore, Defendants assert, Plaintiffs cannot state a claim for Lakewood's online use of "Signaling" after February 1, 2011. The Licensing Agreement provides:

> Usage of music on free video sharing website[s] from the Internet or wireless handheld devices where users can upload, view and share the video (YouTube, Vimeo, Hulu and others similar), in perpetuity. Embedded video is permitted to unlimited websites, unlimited page views on any website, including social network websites (like facebook [sic], Twitter, LinkedIn etc.), for promotional purposes.
>
> \*\*\*
>
> Providing the synchronization [use] takes place in connection with a Production covered by this agreement, the license will run <u>IN PERPETUITY</u> in relation to that Production only.

7

(Licensing Agreement §§ 2, 3.) Due to the perpetual nature of the grant, Defendants insist, Lakewood is permitted to use "Signaling" not only on its own website forever, but also on YouTube, Hulu, Facebook, and "any other website." (Mot. Dismiss 9.)

Even if the Licensing Agreement did not contain a perpetual grant, however, Defendants argue that the Licensing Agreement was still in effect after February 1, 2011 because neither party gave written notice to terminate, as required by the Licensing Agreement. (*Id.*) Although Defendants never paid a fee to renew the license, they insist that Fifth Circuit case law supports the proposition that payment is not a condition precedent to the validity or existence of a license. (*Id.* 10 (citing *Womack+Hampton Architects, L.L.C. v. Metric Holdings Ltd. P'ship*, 102 Fed.Appx. 374, 381 (5th Cir. 2004)).) Therefore, Defendants aver, "[t]he renewal fee in this case is, at best, merely a promise to pay, the failure of which would simply give rise to a breach of contract claim, not a copyright infringement claim." (*Id.*)

Plaintiffs point out that their Original Complaint only takes issue with Defendants' post-expiration Internet use of productions *created after expiration*. (Doc. No. 23, Resp. to Mot. Dismiss 8.) They also dispute Defendants' characterization of the Licensing Agreement. Plaintiffs point out that § 3 of the Licensing Agreement goes on to state:

> Future synchronization (Changes to original production) use of musical compositions selected during the annual term are granted, but used [sic] after the term has expired without the Annual agreement being renewed is strictly prohibited.

(Licensing Agreement § 3.) Plaintiffs argue that § 2's specific grant of Internet rights "in perpetuity" must be interpreted in light of § 3's general limitation of such rights to productions created or revised during the term of the Licensing Agreement. (*Id.*) According to Plaintiffs, § 3 of the Licensing Agreement, when read in its entirety, provides that Lakewood productions incorporating the Composition can be used in perpetuity only if created or revised during the term of the License. (Resp. to Mot. Dismiss 7.) Alternatively, Plaintiffs claim that at the very least the Licensing Agreement does not *unambiguously* support Defendants' interpretation. (*Id.* 8.) To rule in Defendants' favor, Plaintiffs explain, the Court would need to conclude the Licensing Agreement was, in fact, unambiguous. (*Id.*)

The Court agrees with Plaintiffs that the Licensing Agreement provided perpetual-use Internet rights only for productions created prior to expiration of the Agreement. Under British Columbian contract law, "(a) Words must be given their plain and ordinary meaning unless to do so would result in an absurdity; (b) words must be interpreted in light of the whole of the contract and the intention of the parties expressed therein; and (c) the court assumes that the words in a contract are there for a purpose; it may reject an interpretation that would render one of the contract's terms ineffective." *Emtwo Properties, Inc. v. Cineplex (Western Canada), Inc.*, [2011] B.C.J. 1512, at ¶ 52 (quotations and citations omitted). A contract contains an ambiguity if, "after considering the agreement itself, including the particular words used in their immediate context and in the context of the agreement as a whole, there remain two reasonable alternative interpretations." *Id.* (quotations omitted). After considering the Licensing Agreement as a whole, as the Court is required to do, it is clear that there is only one reasonable

9

interpretation. Specifically, the Licensing Agreement unambiguously limits perpetual-use Internet rights to those productions created or revised prior to the Agreement's expiration.

Plaintiffs further dispute Defendants' argument that the Licensing Agreement was still in effect after February 1, 2011. Plaintiffs note that § 3 of the Licensing Agreement provides: "DITTYBASE shall supply LICENSEE Premium Account Access for an annual fee subtotal: **$1,000.00 USD total license fee** = $1000.00 paid in full by Licensee for the term identified above. This license is valid for the period set forth ONLY upon receipt by DITTYBASE of the payment of the license fee." (Licensing Agreement § 3.) Section 8 of the Licensing Agreement goes on to state:

> In the event LICENSEE violates this Agreement or any of the conditions contained herein, then this Agreement shall be immediately terminated and LICENSEE will cease to use the DITTYBASE library and shall immediately return and/or delete all recordings supplied by DITTYBASE to LICENSEE at its own cost to DITTYBASE's office. Any further use of the recordings will constitute an infringement of DITTYBASE's copyrights and entitle DITTYBASE to charge up to five times the normal fee for any such use and to seek and obtain compensation as provided by law including, but not limited to, any damages DITTYBASE may have incurred and any other related costs and attorney's fees.

(*Id.* § 8.) Plaintiffs point out that the automatic renewal is only "upon the same terms and conditions" of the original Licensing Agreement. (*Id.* § 1.) Therefore, Plaintiffs contend, when automatically renewed, the Licensing Agreement was effective "ONLY upon receipt by DITTYBASE of the payment of the license fee." (*Id.* § 3.)

The Court concludes that the Licensing Agreement supports Plaintiffs' reading. Examining the Licensing Agreement as a whole—as the Court is required to do under the

applicable law—the Licensing Agreement was self-canceling without receipt of the license fee. (*Id.* §§ 3, 8.) The case law cited by Defendants only discusses whether payment of a reuse fee was a condition precedent to the right to reuse; it did not concern renewal of a licensing agreement. *Womack+Hampton Architects,* 102 Fed.Appx. at 381. The Licensing Agreement unambiguously supports Plaintiffs' reading that it was not in effect after February 1, 2011.

Defendants also argue that television usage was permitted under the Licensing Agreement. (Mot. Dismiss 11-14.) In contrast, Plaintiffs insist that television rights were not included in the Licensing Agreement. (Resp. to Mot. Dismiss 13-17.) Regardless, Plaintiffs' Original Complaint accuses Defendants of using the Composition in television broadcasts created *after* the expiration of the Licensing Agreement. (Orig. Compl. ¶¶ 22-26.) The Licensing Agreement grants perpetual-use rights only to productions created prior to its expiration. (Licensing Agreement § 2.) Furthermore, the Licensing Agreement was not in effect after February 1, 2011. (*Id.* §§ 3, 8.) Therefore, Defendants' argument for television rights does not entitle them to dismissal of Plaintiffs' claims against Lakewood.

### C. Direct or Contributory Infringement Claims Against the Osteens

Defendants argue that Plaintiffs do not plead any facts alleging conduct attributable to the Osteens, other than their appearance in an informal piece about their ministry. (Mot. Dismiss 15.) Therefore, Defendants urge, the Court should dismiss the claims against them. Specifically, Defendants insist that Plaintiffs do not allege that the Osteens engaged in acts constituting actionable copying of constituent elements of the work that are original. (*Id.*) Indeed, Defendants aver, Plaintiffs fail even to plead facts

11

demonstrating that the Osteens had knowledge of the infringing activity and induced, caused, or materially contributed to the infringing conduct. (*Id.*) Plaintiffs respond that they have stated a claim against the Osteens because (1) their Original Complaint identified the Osteens as directors of Lakewood (Orig. Compl. ¶¶ 5-6), (2) Plaintiffs identify the Osteens as personally starring in infringing television advertisements which repeatedly and prominently feature the composition (*Id.* at ¶ 23), and (3) Plaintiffs' Original Complaint alleges *all* Defendants, including the Osteens, profited from the infringing activity (*Id.* at ¶ 31). (Resp. to Mot. Dismiss 17.)

Plaintiffs are correct that officers of infringing corporations may be liable under certain circumstances for copyright infringement by their corporation. *See Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019 JW, 2009 WL 750201, at *2 (N.D. Cal. March 20, 2009) ("Individual officers of a corporation can be liable for vicarious copyright liability if their actions meet the two-prong vicarious liability test. At the pleading stage, however, bare allegations that an individual was a corporate officer or a member of a company's board of directors are insufficient."); *Metered Music, Inc. v. Powell Meredith Communications Company*, No. Civ.A. 1:04-CV-015-C, 2005 WL 525224, at *3 (N.D. Tex. March 2, 2005) ("Corporate officers may be held jointly and severally liable if the officer has a financial stake in the infringing activity and can supervise the activity causing the infringement."); *Cook v. Jane Lyons Advertising, Inc.*, No. Civ.A. 97–00914, 1998 WL 164776, at *2 (D.D.C. March 31, 1998) ("The doctrine of vicarious liability or infringement, as it relates to the field of copyright law, exists when two elements are met: (1) the individual in question must supervise or at least have the ability to supervise the infringing activity or conduct, and (2) the individual must

have a financial interest in the allegedly infringing activity." (citations omitted)); *Broadcast Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1994 WL 144812, at *2 (5th Cir. April 8, 1994) (unpublished) ("The test of whether a corporate officer is jointly and severally liable with the corporation for copyright infringement is whether the officer has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." (citations omitted)); *Southern Bell v. Associated Telephone Directory*, 756 F.2d 801, 811 (11th Cir. 1985) ("An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." (quotation and citation omitted)).

Plaintiffs have not pleaded sufficient facts to state a claim against the Osteens. Corporate officers have been held liable when, for example, they personally imported, manufactured, and offered the allegedly infringing product for sale, in addition to personally appearing in advertisements promoting the infringing product. *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 21475905, at *3 (N.D. Ill. June 20, 2003). In contrast, most of Plaintiffs' allegations are generically about "Defendants." Plaintiffs only specifically refer to the Osteens to (1) clarify that they are the directors of Lakewood, and (2) explain that they appeared in television advertisements marketing their DVD "Supernatural." (Orig. Compl. ¶ 23.) Plaintiffs do not allege facts showing that the Osteens had a financial stake in the infringing activity and personally supervised the infringing conduct. Therefore, Plaintiffs' claims against the Osteens must be dismissed. However, the Court does grant Plaintiffs leave to amend for the purpose of curing the defects in their claims against the Osteens. *Cole v. Sandel Med.*

*Indus., LLC.*, 413 F.App'x 683, 688 (5th Cir. 2011) (explaining that courts "'should freely give leave to amend when justice so requires'" (quoting Fed. R. Civ. P. 15(a)(2))).

### D. Claims for Each Act of Infringement

Defendants claim that Plaintiffs cannot request statutory damages under 17 U.S.C. § 504(c) for "each act of infringement" (Orig. Compl. ¶¶ 39, 50) because § 504(c) only authorizes an award of statutory damages for each work infringed, not each act of infringement. (Mot. Dismiss 15.) Plaintiffs respond that "Defendants mistakenly assert only a single work has been infringed, and hence Plaintiffs' Complaint may not properly refer to 'each work.'" (Resp. to Mot. Dismiss 19.) Plaintiffs go on to contend that the Composition consists of two interrelated but legally distinct works: the original musical composition and the sound recording physically embodying Plaintiffs' performance of the musical composition. (*Id.*) Defendants do not dispute Plaintiffs' attempt to state a claim for each *work* infringed, however; they merely argue that Plaintiffs cannot recover for each *act* of infringement. Plaintiffs seek recovery for both: In their Original Complaint, Plaintiffs state that they "may elect to be awarded, and, therefore are entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. § 504(c), with respect to each work infringed and each act of infringement." (Orig. Compl. ¶¶ 39, 50.)

"Under § 504(c), a trial court is 'bound by the rule that it must award damages according to the number of separate and independent works infringed.'" *Action Tapes, Inc. v. Glovier*, No. 3:05 CV 1089 R, 2006 WL 349804, at *1 (N.D. Tex. Jan. 12, 2006) (quoting *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 237 (5th Cir. 1988)). In other words, under 17 U.S.C.A. § 504(c)(1), "the total number of 'awards' of statutory

14

damages … that a plaintiff may recover in any given action depends on the number of *works* that are infringed and the number of individually liable *infringers*, regardless of the number of *infringements* of those works." *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992) (footnote omitted) (emphasis in original). *See also Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements."). Therefore, Plaintiffs cannot recover for each act of infringement pursuant to 17 U.S.C. § 504(c). The Court dismisses Plaintiffs' claims for recovery for "each act of infringement."

### E. 17 U.S.C. § 115 as a Private Basis for Recovery

In their Original Complaint, Plaintiffs allege that Defendants "directly infringed on Plaintiffs' copyrights and exclusive rights, in and relating to the Composition under copyright law by distributing, using, commercializing, exploiting, and/or making derivatives of the Composition, without Plaintiffs' written authorization or consent, all in violation of Copyright Act, 17 U.S.C. §§ 106, 115, and 501." (Orig. Compl. ¶ 34.) Section 115 of the Copyright Act concerns compulsory licenses for making and distributing phonorecords. Defendants argue that Plaintiffs cannot state a claim for infringement under § 115 because that section does not confer an independent copyright interest or provide a private right of action for copyright owners. Plaintiffs do not dispute that there is no private right of action for copyright owners under § 115; instead, they explain that they do not actually seek any remedies against Defendants under § 115. (Resp. to Mot. Dismiss 20.) Therefore, the Court dismisses Plaintiffs' claims under § 115.

### F. Punitive Damages Under the Copyright Act

Plaintiffs seek to recover punitive damages. However, as Defendants observe, "[p]unitive damages cannot be recovered under the Copyright Act." *BanxCorp. v. Costco Wholesale Corp.*, 723 F.Supp.2d 596, 620 (S.D.N.Y. 2010) (citing *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F.Supp.2d 159, 167 (S.D.N.Y. 2009) ("There is no circumstance in which punitive damages are available under the Copyright Act of 1976."); *Granger v. Gill Abstract Corp.*, 566 F.Supp.2d 323, 330 (S.D.N.Y. 2008) ("[I]rrespective of whether a plaintiff is seeking actual or statutory damages, 'punitive damages are not available under the Copyright Act of 1976.'" (quoting *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983))); *Viacom Int'l, Inc. v. Youtube, Inc.*, 540 F.Supp.2d 461, 464 (S.D.N.Y. 2008) ("Common-law punitive damages cannot be recovered under the Copyright Act.")). *See also Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 545 (4th Cir. 2007); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001) ("The district court correctly held that Davis is not entitled to punitive damages under the Copyright Act. As a general rule, punitive damages are not awarded in a statutory copyright infringement action." (internal citations omitted)). Therefore, the Court strikes Plaintiffs' request for punitive damages. Fed. R. Civ. P. 12(f).

### G. Rights of Attribution and Integrity

Defendants state that, "[t]o the extent Plaintiffs attempt … to state a claim for infringement of the right of attribution and/or integrity, their efforts fail," as "[t]he rights of attribution and integrity … are not generally recognized by U.S. copyright law" except with respect to "works of visual art." (Mot. Dismiss 17.) The Court does not read

16

Plaintiffs' Original Complaint to state a claim for infringement of the rights of attribution and integrity. Plaintiffs also explain that they have not expressly or impliedly pleaded infringement of their rights of attribution and integrity. (Resp. to Mot. Dismiss 22.) The Court declines Defendants' request to dismiss a claim that is not actually included in the Original Complaint.

### H. Jurisdiction over Extraterritorial Conduct

Finally, Defendants aver that this Court lacks subject matter jurisdiction over any alleged extraterritorial conduct and damages pursuant to Federal Rule of Civil Procedure 12(b)(1). (Mot. Dismiss 18-19.) Defendants point out that the Copyright Act does not apply to extraterritorial acts of infringement. (*Id.* 19.) *See also* 5 William F. Patry, *Patry on Copyright* § 17:48 (2011) ("Because the Copyright Act is not extraterritorial, acts which occur outside the United States (as defined in 17 U.S.C.A. § 201) do not arise under the Copyright Act, and thus there is no subject-matter jurisdiction for such acts."); *Illustro Systems Intern., LLC. v. International Business Machines Corp.*, No. 3:06-CV-1969-L, 2007 WL 1321825, at *13 (N.D. Tex. May 4, 2007) ("The court declines to follow the courts holding the minority view and rather follows the [majority] rule that extraterritorial acts of infringement do not violate federal copyright law."); *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) ("[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States. Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action."). *But see* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 17.02, at 17-18 (2011) ("For the most part, acts of

17

infringement that occur outside of the jurisdiction of the United States are not actionable under the United States Copyright Act. This for the reason that copyright laws do not have extraterritorial operation. It has been held that a complaint concerning extraterritorial infringement fails to state a cause of action, but is not deficient on the distinct basis of lacking federal court subject matter jurisdiction."); *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir.), *cert. denied*, 555 U.S. 1013, 129 S.Ct. 578, 172 L.Ed.2d 432 (2008) ("There is no indication that Congress intended the extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction of the federal courts. Accordingly, we hold that the issue is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction."). Therefore, Defendants insist, this Court should dismiss Plaintiffs' claims for any alleged extraterritorial acts and damages due to lack of subject matter jurisdiction or, alternatively, for failure to state a claim. (Mot. Dismiss 19.)

As Plaintiffs observe, however, "if, and to the extent, a part of an 'act' of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable under American copyright law." 4 *Nimmer on Copyright* § 17.02, at 17-19. Therefore, "a distinction should be drawn between purely extraterritorial conduct, which is itself nonactionable, and conduct that crosses borders, so that at least a part of the offense takes place within the United States." *Id.* at 17-20. "[I]t would seem upon a straightforward application of the statute that, regardless of how much infringing conduct may or may not occur abroad, when violation of one of the exclusive rights in

18

copyrighted works is completed within the United States, the activity becomes actionable under domestic law." *Id.* at 17-21. *See also Compaq Computer Corp. v. Ergonome, Inc.*, No. Civ.A. H–97–1026, 2001 WL 34104826, at *4 (S.D. Tex. June 27, 2001) ("The exception to the presumption against extraterritoriality applies in this case because Compaq allegedly completed the initial, primary infringement within the borders of the United States."); *Los Angeles News Services v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998) (finding that plaintiff was "entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by defendants"); *General Motors Corp. v. Ignacio Lopez de Arriotua*, 948 F.3d 684, 691 (E.D. Mich. 1996) ("If all copying occurred outside the U.S., the Copyright Act would not apply. However, as long as some occurred in the U.S., the Copyright Act applies." (citations omitted)); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("It is well established that copyright laws generally do not have extraterritorial application. There is an exception—when the type of infringement permits further reproduction abroad—such as the unauthorized manufacture of copyrighted material in the United States." (citations omitted)).

Plaintiffs allege that Defendants "induced and caused various third parties, including television stations, to broadcast, perform, or otherwise exploit the Composition, and derivatives thereof, throughout the United States, and in certain foreign countries without Plaintiffs' written authorization or consent." (Orig. Compl. ¶ 11.) Plaintiffs further accuse Defendants of using Plaintiffs' Composition "in global television broadcasts of church services." (*Id.* ¶ 22.) Reading the Original Complaint in the light most favorable to Plaintiffs, the Court concludes that it states a claim that infringing acts

19

occurred initially in the United States. Therefore, Plaintiffs' extraterritorial infringement claims should not be dismissed. At the summary judgment stage, evidence may show that the international copyright infringement did not originate in or even occur partially in the United States, therefore meriting judgment in favor of Defendants. Yet Plaintiffs' Original Complaint states sufficient facts to survive the Motion to Dismiss.

### IV. CONCLUSION

For the reasons explained above, Defendants' Motion is **GRANTED** in part and **DENIED** in part. Plaintiffs are granted fourteen (14) days from the date of this Memorandum and Order in which to amend their Original Complaint in order to cure the defects in their allegations against the Osteens.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 14th day of February, 2012.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**